IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH F. BEHOUNEK,

       Plaintiff,

v.                                          1:20-cv-00405-JCH-LF

MICHELLE LUJAN GRISHAM,
*individually and doing business as Governor
of the State of New Mexico*, and
the STATE OF NEW MEXICO,

       Defendants.

## AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## ON MOTION FOR JUDGMENT ON THE PLEADINGS
## <u>FOR PLAINTIFF'S OFFICIAL CAPACITY FEDERAL LAW CLAIMS</u>

THIS MATTER comes before the Court on Defendants Michelle Lujan Grisham and the

State of New Mexico's Motion for Judgment on the Pleadings for Plaintiff's Official Capacity

Federal Law Claims, filed on August 6, 2021.  Doc. 64.  Plaintiff Joseph F. Behounek filed a

response on August 19, 2021.  Doc. 65.  Defendants filed a reply on September 2, 2021.  Doc.

70.  Senior United States District Judge Judith Herrera referred this matter to me for a

recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3).  Doc. 33.  Having

reviewed the briefing and the relevant law, and being fully informed of the premises, I

recommend that the Court GRANT defendants' motion for judgment on the pleadings.

### A.  Background

Mr. Behounek filed his Amended Complaint on May 3, 2020, alleging that the executive

orders issued by Governor Lujan Grisham and Public Health Orders issued by the New Mexico

Department of Health ("NMDOH") during the Covid-19 pandemic violate his civil and

constitutional rights.  Doc. 11.  Mr. Behounek alleges that these orders violate his rights under

the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution.  *Id*. ¶¶ 33–44.  He further alleges that these orders violate the New Mexico Constitution and various New Mexico statutes.  *Id*. ¶¶ 26, 27, 31, 48, 49.

Mr. Behounek alleges that he was harmed by Governor Lujan Grisham's orders because the orders restricted business occupancy levels and required non-essential businesses to close their doors to the public.  *See generally* Doc. 11 at 3–6, ¶¶ 3–25.  Mr. Behounek alleges that he suffered "irreparable financial harm," "mental stress," and will be unable to resume his business operations and/or will lose his business investment.  *Id*. at 12, ¶¶ 50–52.  Mr. Behounek asks for permanent injunctive relief[1] to provide "relief to the plaintiff from the defendant's orders placing restriction on certain businesses and gatherings."  *Id*. at 13.

In his Amended Complaint, Mr. Behounek sues Governor Lujan Grisham in both "her individual and official capacity."  Doc. 11 at 2, ¶ 4.[2]  Governor Lujan Grisham previously filed a motion for summary judgment, in which she argued she was entitled to qualified immunity on claims against her in her individual capacity.  Doc. 38.  On March 11, 2021, the Court granted Governor Michelle Lujan Grisham's Motion for Summary Judgment (Doc. 38) and dismissed with prejudice all claims of First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment violations against Governor Lujan Grisham individually.  Doc. 50.  After the Court granted summary judgment, Mr. Behounek's remaining claims included his state law claims, *see* Doc. 11

---

[1] Mr. Behounek also asked for immediate injunctive relief and requested a temporary restraining order.  Doc. 10; Doc. 11 at 13.  The Court denied Mr. Behounek's request for immediate injunctive relief.  Docs. 14, 18.

[2] Mr. Behounek's complaint contains two paragraphs numbered 4.  The Court here refers to the first paragraph 4.

¶¶ 26, 27, 31, 48, 49, and his claims against the State of New Mexico and Governor Lujan Grisham in her official capacity, *see* Doc. 48 at 2–3, 6.

On August 6, 2021, defendants filed a Motion for Judgment on the Pleadings for Plaintiff's State Law Claims (Doc 63) and a Motion for Judgment on the Pleadings for Plaintiff's Official Capacity Federal Law Claims (Doc. 64).  For the reasons explained below, I recommend that the Court grant the Motion for Judgment on the Pleadings for Plaintiff's Official Capacity Federal Law Claims (Doc. 64).  Granting this motion will leave no remaining federal claims; I therefore recommend that the Court decline to exercise supplemental jurisdiction over Mr. Behounek's state law claims.

## B.  Rule 12(c) Standard of Review

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings any time after the pleadings close, so long as it is early enough not to delay the trial. FED. R. CIV. P. 12(c).  Such a motion is subject to the same standard of review as a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6).  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).  Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, a court must identify the adequately pled factual allegations contained in the complaint, disregarding any legal conclusions in the process.  *Id.* at 678.  Next, having identified the adequately pled facts, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim should be dismissed where it is

factually or legally insufficient to state a plausible claim for relief.  *Id*.  In making this

determination, the court views the complaint in the light most favorable to the plaintiff.  *Schrock*

*v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013); *see also Park Univ. Enters., Inc. v. Am.*

*Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) (Court should "accept all facts

pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings

in favor of the same.").

Mr. Behounek is proceeding pro se.  In reviewing a pro se complaint, the Court liberally

construes the factual allegations.  *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir.

1992).  However, a pro se plaintiff's pleadings are judged by the same legal standards that apply

to all litigants, and a pro se plaintiff must abide by the applicable rules of court.  *Ogden v. San*

*Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  The Court is not obligated to craft legal

theories for the plaintiff or to supply factual allegations to support the plaintiff's claims.  *Hall,*

935 F.2d at 1110.  Nor may the Court assume the role of advocate for the pro se litigant.  *Id*.

### C. Sovereign Immunity

Defendants argue that sovereign immunity bars Mr. Behounek's claims against the State

of New Mexico and against Governor Lujan Grisham in her official capacity.  Doc. 64 at 8–14.

Defendants assert that none of the exceptions to sovereign immunity apply:  the state has not

consented to suit, Congress has not abrogated the state's sovereign immunity, and Mr. Behounek

lacks standing to bring a claim for prospective relief under *Ex parte Young* because his claim is

based on "speculative future harm."  *Id*.  In response, Mr. Behounek confusingly responds to

arguments not made in the motion, cites several cases that are factually and legally irrelevant,

and urges the Court not to follow controlling Supreme Court precedent.  *See generally* Doc. 65.

4

I agree that sovereign immunity bars Mr. Behounek's claims against the State of New Mexico and against Governor Lujan Grisham in her official capacity.  I therefore recommend that the Court dismiss these claims with prejudice.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has construed the Eleventh Amendment to prohibit federal courts from entertaining suits against States brought by their own citizens or citizens of another State without their consent.  *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).[3]  State officials likewise enjoy immunity when acting as "an arm of the State."  *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977).

Eleventh Amendment immunity, however, is not absolute.  "Two circumstances exist where a citizen may sue a State in federal court without running afoul of the Eleventh

---

[3] Mr. Behounek takes umbrage with the holding in *Ex parte Young* that the Eleventh Amendment "applies to a suit brought against a state by one of its own citizens, as well as to a suit brought by a citizen of another state."  *Ex parte Young*, 209 U.S. 123, 150 (1908) (citing *Hans v. Louisiana,* 134 U.S. at 10).  Mr. Behounek urges the Court not to follow the Supreme Court's holding.  Doc. 65 at 6–7, ¶¶ 14–20.  This the Court cannot do.  "Vertical stare decisis is absolute and requires [lower courts] . . . to follow applicable Supreme Court precedent in every case."  *United States v. Guillen*, 995 F.3d 1095, 1114 (10th Cir. 2021).  Mr. Behounek next urges the Court to find that this holding only applies if actions of the state are taken under legislative authority, rather than under executive "emergency powers."  Doc. 65 at 8–9, ¶ 21.  However, Mr. Behounek provides no legal authority for this argument, and the Court therefore deems it waived.  *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner . . . are waived.").  Finally, Mr. Behounek urges the Court to find that Eleventh Amendment sovereign immunity does not apply to "constitutional questions."  Doc. 65 at 9–10, ¶ 24.  Again, Mr. Behounek provides no legal authority for this argument, and the Court therefore deems it waived.  *Hardman*, 297 F.3d at 1131.

Amendment." *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998).  First, such suits are not barred if the State has voluntarily waived its immunity and consented to suit in federal court.  *Id.*  Second, such suits are not barred if Congress has explicitly abrogated the State's immunity pursuant to Section 5 of the Fourteenth Amendment.  *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Finally, although not properly characterized as an exception to a state's Eleventh Amendment immunity, the doctrine that the Supreme Court announced in *Ex parte Young*, 209 U.S. at 128 (1908), allows for suits against state officials under certain circumstances.  *See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 607–08 (10th Cir. 1998) ("The *Ex parte Young* doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state.").  In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment "does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune." *Elephant Butte Irr. Dist. of New Mexico*, 160 F.3d at 607–08 (citing *Ex parte Young*, 209 U.S. at 159–60).  The *Ex parte Young* doctrine allows suits to proceed against defendant state officials if the following requirements are met:  (i) the plaintiff is suing state officials rather the state itself; (ii) the plaintiff has alleged a non-frivolous violation of federal law; (iii) the plaintiff seeks prospective equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit does not implicate special sovereignty interests.  *See Elephant Butte Irrigation Dist. of N.M.,* 160 F.3d at 609.

### 1.   Neither of the two exceptions to sovereign immunity applies in this case.

Neither of the two exceptions to sovereign immunity applies in this case.  First, nothing on the record or in the briefing shows that the State of New Mexico has waived its immunity and

consented to suit.  Second, Congress did not abrogate the state's Eleventh Amendment immunity under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  The parties disagree about which statute Mr. Behounek brings his claims under.  Defendants rightly point out that Mr. Behounek's complaint did not "identify his right of action for his federal law claims," leaving them to make a "good faith effort" to determine his "right of action for his federal law claims."  Doc. 70 at 3. Defendants assumed that Mr. Behounek brought his claims under 42 U.S.C. § 1983, and argued that Mr. Behounek's claims for monetary damages against the State of New Mexico and Governor Lujan Grisham in her official capacity are barred by sovereign immunity.  Doc. 64 at 9–10.  Defendants cite *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989), which held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity."  *Id*. at 10.  Thus, as defendants point out, "as a matter of black-letter law, a plaintiff cannot file a Section 1983 claim for monetary damages against a state government or its entities or its officials acting in their official capacities."  Doc. 64 at 10; *see also Ellis*, 163 F.3d at 1196 (citing *Quern v. Jordan,* 440 U.S. 332, 345 (1979)) ("The Supreme Court has . . . held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983.").

In his response, Mr. Behounek denies bringing his claims under Section 1983.  Doc. 65 at 1.  Instead, for the first time, Mr. Behounek states that he brings his claims under 42 U.S.C. § 1985.  *Id*.  Even assuming that Mr. Behounek could amend his complaint at this late juncture or that he somehow states a valid claim under § 1985, his claims for monetary damages against the State of New Mexico and Governor Lujan Grisham in her official capacity still would be barred by sovereign immunity.  *See Ellis*, 163 F.3d at 1196 (holding that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1985); *Buck v. Utah Lab.*

*Comm'n.*, 73 F. App'x 345, 347 (10th Cir. 2003) (unpublished) (same); *see also Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (unpublished) (holding dismissal of claims against state entities was correct because Eleventh Amendment immunity was not abrogated in connection with §§ 1983 or 1985); *Barger v. State of Kan.*, 620 F. Supp. 1432, 1434 (D. Kan. 1985) (holding that "plaintiff's sections 1983 and 1985 claims are barred by the Eleventh Amendment and must be dismissed").  Thus, regardless of whether Mr. Behounek brings his claims under § 1983 or § 1985, his claims against the State of New Mexico and against Governor Lujan Grisham in her official capacity are barred by sovereign immunity.

The Court has endeavored to understand and address the arguments Mr. Behounek raises in his response, but the Court notes that his response is not terribly clear.  *See generally* Doc. 65. The response repeatedly refers to arguments allegedly made by defendants which defendants never made.  *See, e.g.*, Doc. 65 at 3, ¶ 4 (stating that defendants cited "cases taken out of context such as *Jacobson v. Massachusetts*, 197 U.S. 11 (U.S. 1905)" when defendants never cited this case[4]); Doc. 65 at 15, ¶ 38 (alleging that "Defense brings up the 'facial attack' as part of what is apparently a 12(b)(1) motion" when defendants neither mentioned a facial attack nor filed a 12(b)(1) motion); Doc. 65 at 17, ¶ 42 (alleging that "[t]he Defense brings up a plethora of District and Circuit Court cases but only one Supreme Court case—*South Bay United Pentecostal Church v. Gavin Newsom*, 590 U.S. _____ (2020)" when defendants did not bring up any of these cases).  Mr. Behounek also curiously refers to himself in the plural throughout the

---

[4] Mr. Behounek further discusses the *Jacobsen* case later in his response.  *See* Doc. 65 at 16–20, ¶¶ 39–50.  Mr. Behounek claims that he cited *Jacobson* in his Amended Complaint.  Doc. 65 at 16, ¶ 39.  This is not true.  Mr. Behounek also claims that defendants use *Jacobsen* "as the core of its defense on the merits."  *Id.*  This also is not true.  Given the faulty factual premises Mr. Behounek gives for discussing this case at all, the Court fails to see the relevance of his lengthy discussion of the *Jacobsen* case.  *See* Doc. 65 at 16–20, ¶¶ 39–50.

response.  *See* Doc. 65 (referring to "plaintiffs" throughout response when there is only one plaintiff in this case).  The Court obviously cannot say with certainty why the response does not match the motion.  But it appears probable that Mr. Behounek copied a large part of his response from another case, which is factually and legally distinct from this case, without adequately considering or addressing these distinctions.

As an initial matter, Mr. Behounek appears confused about which claims are still alive in this case.  Throughout his response, Mr. Behounek refers to his claims against Governor Lujan Grisham in her individual capacity.  *See, e.g.*, Doc. 65 at 5, ¶ 12 ("For purposes of this case, the State official was named both individually and as representatives of the State within the complaint as Plaintiffs believe both should apply but the case moves forward if either applies."); Doc. 65 at 12, ¶ 28 ("the Complaint named both the State of New Mexico and the Governor . . . included individually and are being sued both as representatives of the state and in their individual capacities").  However, on March 11, 2021, the Court granted Governor Michelle Lujan Grisham's Motion for Summary Judgment (Doc. 38) and dismissed with prejudice all claims of First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment violations against her individually.  Doc. 50.  Mr. Behounek's only remaining federal claims are his claims against the State of New Mexico and Governor Lujan Grisham in her official capacity, not her individual capacity.  *See* Doc. 48 at 2–3, 6.

The cases Mr. Behounek cites in his response are not on point.  First, Mr. Behounek cites *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).  Doc. 65 at 5, 10–12, ¶¶ 12, 25.  *Tanzin*, however, held only that the Religious Freedom Restoration Act ("RFRA") of 1993, 42 U.S.C. § 2000bb, permits lawsuits seeking money damages against federal employees in their individual capacities.  *Tanzin*, 141 S. Ct. at 490.  Mr. Behounek did not file a claim under RFRA, and he

9

has no remaining claims against officials in their individual capacities.  Thus, *Tanzin* is not on

point.  Second, Mr. Behounek cites *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63,

66 (2020).  Doc. 65 at 5–6, ¶13.  Mr. Behounek cites this case for the proposition that "sovereign

immunity is waived by statute regarding violations of religious freedom which have been

discussed in the complaint."  Doc. 65 at 6, ¶ 13.  Mr. Behounek's complaint, however, does not

allege violations of religious freedom.  *See generally* Doc. 11.  *Roman Catholic Diocese of*

*Brooklyn* is a case about the Free Exercise Clause of the First Amendment—unlike Mr.

Behounek's case—and is not on point.

In short, Mr. Behounek fails to show that either of the two exceptions to sovereign

immunity apply in this case.  First, nothing on the record or in the briefing shows that the State

of New Mexico has waived its immunity.  Second, Congress did not abrogate the state's

Eleventh Amendment immunity under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  Thus, all

claims for monetary damages against the State of New Mexico and Governor Lujan Grisham in

her official capacity are barred by sovereign immunity.

## 2. The *Ex parte Young* doctrine does not apply in this case.

Because sovereign immunity bars Mr. Behounek's remaining federal claims for monetary

damages, the only remaining way for his claims to go forward are under the *Ex parte Young*

doctrine.  In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment "does not

bar a suit against a state official in federal court which seeks only prospective equitable relief for

violations of federal law."  *See Elephant Butte Irrigation Dist. of N.M,* 160 F.3d at 607–08.  The

*Ex parte Young* doctrine allows suits to proceed against defendant state officials if the following

requirements are met:  (i) the plaintiff is suing state officials rather the state itself; (ii) the

plaintiff has alleged a non-frivolous violation of federal law; (iii) the plaintiff seeks prospective

10

equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit

does not implicate special sovereignty interests.  *See id*. at 609.  Defendants argue that Mr.

Behounek's claims cannot proceed under *Ex parte Young* because he cannot meet the third

requirement:  he lacks standing to bring a claim for prospective equitable relief because his claim

is based on "speculative future harm, namely that the Governor will renew Covid-19 restrictions

on businesses."  Doc. 64 at 10–14.

### a. Mr. Behounek admits that he no longer is seeking prospective injunctive relief.

Mr. Behounek cannot sue under the *Ex parte Young* doctrine because he admits that he no

longer has a claim for prospective injunctive relief:

> The concept of 'prospective relief' was not followed by the Supreme Court in any
> of the above-cited law, nor is it relevant here.  The Plaintiff has lost his business
> that is not based on future speculation.  The time for injunctive relief past [sic] 15
> months ago.  The damage has already occurred.

Doc. 65 at 12, ¶ 27.  By admitting that he no longer is bringing a claim for prospective injunctive

relief, Mr. Behounek admits that he does not meet the third requirement for bringing suit under

the *Ex parte Young* doctrine.  As such, all of Mr. Behounek's claims against Governor Lujan

Grisham in her official capacity are barred.  I recommend that the Court dismiss all claims

against the Governor in her official capacity with prejudice.

### b. Mr. Behounek's claims for prospective injunctive relief are moot.

Alternatively, Mr. Behounek's claims against Governor Lujan Grisham in her official

capacity are moot, and the Court should dismiss them on this basis.  "Article III of the

Constitution permits federal courts to decide only 'Cases' or 'Controversies.'"  *New Mexico

Health Connections v. United States Dep't of Health & Human Servs.*, 946 F.3d 1138, 1159

(10th Cir. 2019) (quoting U.S. Const. art. III, § 2).  "An actual controversy must be extant at all

stages of review, not merely at the time the complaint is filed." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (citation omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* "Mootness deprives federal courts of jurisdiction." *Id.*

A case becomes moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* In determining whether a case is moot, the "crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Id.* at 1165–66. In other words, "a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Id.* at 1166.

A defendant's voluntary cessation may moot a case "if two conditions are satisfied: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocable eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (citation omitted). The party asserting mootness has the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (citation omitted).

This burden, however, "is not insurmountable, especially in the context of government enforcement." *Brown*, 822 F.3d at 1167; *see also Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("In practice, [this] burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case."). "Thus, even when a legislative body has the power to re-enact an ordinance or statute, ordinarily an amendment or repeal of it moots a

case challenging the ordinance or statute." *Rio Grande Silvery Minnow*, 601 F.3d at 1116.  In

the context of governmental action, "most cases that deny mootness rely on *clear showings* of

reluctant submission [by government actors] and a desire to return to the old ways."  *Id.* at 1117

(citation omitted) (emphasis in original).  Accordingly, the Tenth Circuit has held that, where a

legislature has repealed or amended a statute after a judicial challenge has been commenced, "the

voluntary cessation exception has no application where there is no evidence in the record to

indicate that the legislature intends to reenact the prior version of the disputed statute."  *Id.*

(citation omitted).

Similarly, "the withdrawal or alteration of administrative policies can moot an attack on

those policies."  *Id.* (citation omitted).  "And the mere possibility that an agency might rescind

amendments to its actions or regulations does not enliven a moot controversy."  *Id.* (citation and

quotation omitted).  To the contrary, "a case ceases to be a live controversy if the possibility of

recurrence of the challenged conduct is only a speculative contingency."  *Id.* (citation omitted).

Similarly, the expiration of a governor's executive orders can moot a challenge to the executive

orders.  *S. Wind Women's Ctr. LLC v. Stitt*, 823 F. App'x 677, 682 (10th Cir. 2020)

(unpublished).

Defendants argue that Mr. Behounek's claims for prospective injunctive relief are moot.

They argue that Governor Lujan Grisham lifted many pandemic restrictions—including

occupancy restrictions on commercial businesses—on July 1, 2021, thereby rendering Mr.

Behounek's claims for prospective injunctive relief moot.  Doc. 64 at 11–12.  In addition, they

argue that Mr. Behounek lacks standing for these claims because he does not have a "good

chance of being likewise injured in the future."  *Id*. at 11 (quoting *PeTA, People for the Ethical

Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002)).  The Court agrees

that this "voluntary cessation" renders Mr. Behounek's claim for prospective injunctive relief moot because: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocable eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1115. The Court will address the second requirement first.

### i. Interim relief or events have completely and irrevocable eradicated the effects of the alleged violation.

Mr. Behounek filed his lawsuit on April 28, 2020. Doc. 1. Since that time, "interim relief or events have completely and irrevocable eradicated the effects of the alleged violation[s]." *Rio Grande Silvery Minnow*, 601 F.3d at 1115.

Mr. Behounek's complaint is based on orders issued by Governor Lujan Grisham and the New Mexico Department of Health during the period of March 11, 2020, through April 30, 2020. Doc. 11 at 3–6, ¶¶ 6–8, 11–12, 14, 15–18, 24–25. Mr. Behounek specifically complains about the following orders: On March 11, 2020, Governor Lujan Grisham issued Executive Order 2020-004, declaring a 30-day state of public health emergency due to Covid-19. Doc. 11-1 at 1–5. On March 16, 2020, the NMDOH issued a Public Health Order ("PHO") prohibiting gatherings of 100 or more individuals, and limiting food service establishments to fifty percent maximum occupancy. *Id*. at 6–9. On March 19, 2020, the NMDOH issued a PHO prohibiting gatherings of ten or more individuals, directing "recreational facilities" to close, directing restaurants and eateries to provide take-out and home delivery only, and directing businesses "not engaged in the provision of an essential service to limit operations to the greatest extent possible and to minimize employee contact." *Id*. at 10–14. On March 23, 2020, the NMDOH issued a PHO prohibiting gatherings of five or more individuals, and directing all businesses

14

defined as "non-essential" to close.[5] *Id.* at 15–20.[6]  On April 6, 2020, Governor Lujan Grisham

issued Executive Order 2020-022, extending the public health emergency declared on March 11,

2020, for an additional 30 days.  *Id.* at 28–30.  Also on April 6, 2020, the NMDOH issued a PHO

amending the March 23, 2020 PHO in some ways, but reiterating the prohibition on gatherings

of five or more individuals, and directing all businesses defined as "non-essential" to remain

closed.  *Id.* at 31–38.  On April 11, 2020, the NMDOH issued a PHO amending the March 23,

2020 and April 6, 2020 PHOs in some ways, but retaining the prohibitions on gatherings of five

or more individuals, and the closure of non-essential businesses through April 30, 2020.  *Id.* at

39–45.  On April 30, 2020, Governor Lujan Grisham entered executive order 2020-026,

renewing the state of emergency and extending it through May 15, 2020.  *Id.* at 138–41.  Also on

April 30, 2020, the NMDOH issued a PHO extending the prohibition on gatherings of more than

five people and the closure of non-essential businesses through May 15, 2020.  *Id.* at 142–49.

All of Mr. Behounek's claims for constitutional violations are based on these orders limiting

public gathering and requiring nonessential businesses to close.  Doc. 11 at 7–9, ¶¶ 33–44, 46–

47.

      These orders limiting public gathering and requiring nonessential businesses to close are

no longer in effect, rendering moot any claim for prospective relief based on these limitations.

On July 1, 2021, Governor Lujan Grisham lifted "all pandemic-related occupancy restrictions on

---

[5] The PHO included a list of "essential business[es]".  Doc. 11-1 at 16–18.

[6] On March 24, 2020, the NMDOH issued a PHO restricting non-essential health care services, procedures and surgeries.  Doc. 11-1 at 21–23.  On March 27, 2020, Governor Lujan Grisham entered Executive Order 2020-013 directing individuals traveling to New Mexico through an airport to self-isolate or self-quarantine for a period of at least 14 days.  *Id.* at 24–27.  Although Mr. Behounek mentions these orders, Doc. 11 at 4–5, ¶¶ 14,15, they do not appear relevant to the claims in his complaint.

all forms of commercial activity," and since that date, "all businesses across the state," including

Mr. Behounek's business, have been able "to operate at 100 percent of maximum capacity."

Office of the Governor Press Release (June 30, 2021), available at

https://www.governor.state.nm.us/2021/06/30/n-m-to-lift-pandemic-restrictions-thursday/ (last

visited March 3, 2022).  The limitations on public gatherings and orders requiring nonessential

businesses to close are no longer in effect.  Since Mr. Behounek filed his lawsuit on April 28,

2020, "interim relief or events have completely and irrevocable eradicated the effects of the

alleged violation[s]."  *Brown*, 822 F.3d at 1165.

### ii. There is no reasonable expectation that the alleged violations will recur.

"[T]here is no reasonable expectation that the alleged violation[s] will recur."  *Rio*

*Grande Silvery Minnow*, 601 F.3d at 1115.  As defendants point out, Governor Lujan Grisham's

decision was based on NMDOH's report that "[s]ixty-two percent of eligible New Mexicans

have completed their [Covid-19] vaccination series" as of June 29, 2021.  Doc. 64 at 11 (citing

Office of the Governor Press Release (June 30, 2021)).  Governor Lujan Grisham's criteria for

lifting Covid-19 restrictions was to achieve a vaccination rate of at least 60 percent.  *Id*. at 12.

Defendants argue that "[b]ecause Covid-19 vaccination rates can only increase and cannot

decrease, it is an impossibility for the vaccination rate to drop back below 60 percent.  Thus, it is

reasonable to infer that New Mexico will not re-institute occupancy restrictions on commercial

activity."  *Id*.  Defendants argue that Mr. Behounek cannot show that he "is at imminent risk of

once again having his business subject to pandemic occupancy restrictions."  *Id*.

The Court agrees that there is no reasonable expectation that the restrictions Mr.

Behounek complains of will recur.  New Mexico is not likely to close businesses or re-institute

occupancy restrictions on commercial activity because of increased vaccination rates and

changes in the state's approach to managing the pandemic.  Senior United States District Judge

Martha Vazquez recently conducted an exhaustive analysis of this issue.  *Hinkle Family Fun*

*Center, LLC v. Michelle Lujan Grisham*, 20cv1025 MV-LF, Doc. 45 at 1–10 (explaining history

of Covid-19 mitigation strategies in New Mexico) (Feb. 17, 2022).  Based on the trajectory of

scientific knowledge and New Mexico's Covid-19 management strategies, Judge Vazquez

concluded that business closures and gathering limitations were not likely to be reimposed in

New Mexico:

> As detailed above, at the beginning of the pandemic—before there were
> vaccines—the science-driven data indicated that COVID-19 spread easily through
> close person-to-person contact, and that the risk of transmission increased if
> individuals interacted with more people, came within six feet of one another, and
> spent longer periods of time together.  Given this data, Defendants determined
> that social distancing was the *only* way to minimize the spread of COVID-19, and
> at that time, was the *most effective means* of mitigating the potentially devastating
> impact of the pandemic in New Mexico.  In accordance with these determinations,
> Defendants enacted a series of orders that first closed non-essential businesses,
> and then gradually allowed such businesses to open with occupancy restrictions,
> along with an order that required a period of quarantine for travelers entering New
> Mexico.  Those early orders included the Challenged Orders, pursuant to which
> Plaintiffs' recreational facilities were required to remain closed.
> As the science evolved and the vaccines were developed, approved, and
> made available to the public, it became clear that the consistent and proper use of
> face masks was one of the most effective ways to minimize the spread of COVID-
> 19, and that the vaccines are safe and the most effective way of preventing
> infection, serious illness, and death, even in the face of the Delta and Omicron
> variants.  In accordance with the science, Defendants refocused their pandemic
> mitigation strategies away from restricting businesses and travel, and toward the
> vaccination rollout, which they saw as "their most powerful weapon," and mask
> mandates.  Indeed, as early as November 2020, Defendants announced the
> transition to the tiered county-by county COVID risk system, with the specific
> purpose of enabling local communities to shed burdensome restrictions as soon as
> the virus began to retreat within their borders.  Under the "red to green"
> framework, a succession of public health orders rescinded prior public health
> orders and allowed, inter alia, outdoor and indoor recreational facilities to reopen
> and operate at reduced but increasing capacities commensurate with each county's
> decrease in COVID-19 case incidence rates and percentage of positive COVID-19

test results and increase in vaccination rates.  In February 2021, the Governor ended the quarantine requirements for travelers, thus making it possible for businesses, like Plaintiffs, to once again welcome out-of-state clientele.

Tying reopening to vaccination rates, once 60 percent of eligible New Mexicans had been fully vaccinated, the State ultimately retired its color-coded, county-by-county system and all COVID-19 health restrictions on commercial and day-to-day activity.  Thus, as of July 1, 2021, all pandemic-related occupancy restrictions on all forms of commercial activity were lifted, and all businesses across the state, including recreational facilities, have since been able to operate at 100 percent of maximum capacity.

Quickly following the reopening of New Mexico, the highly transmissible Delta variant emerged, soon accounted for virtually all new infections, and caused a significant increase in new COVID-19 cases.  In response to the rising tide of cases, Defendants did not reverse course and reimpose restrictions on businesses or travel into the state.  Rather, in keeping with their science-driven determinations that vaccines and masks are the most effective means of limiting the spread of COVID-19, Defendants imposed vaccine and/or testing mandates on certain categories of individuals.  And even with the startling ascendency of the Omicron variant and the skyrocketing numbers of infections and hospitalizations it has caused, Defendants have not reversed course and reimposed restrictions on businesses or travel into the state.  Rather, Defendants have extended the mask requirement, and have mandated that certain individuals receive booster vaccines.

Thus, despite "complications" from not only the Delta variant but also the Omicron variant, Plaintiffs' prediction that future public health orders will "again include requirements that limit or prohibit attendance by the public to the businesses of these Plaintiffs" has not come to pass.  To the contrary, the trajectory of Defendants' response to COVID-19 has consistently moved away from restrictions on businesses and travel and toward vaccine and mask mandates.  Given this trajectory, coupled with the scientific basis for that trajectory showing that masks and vaccines, rather than business closures, are the most effective means of containing the spread of COVID-19, there is no reasonable expectation that Defendants will reverse course and subject Plaintiffs to restrictions akin to those imposed under the now-defunct Challenged Orders.

*Id*., Doc. 45 at 26–28.  On the same day Judge Vazquez issued the *Hinkle* opinion, Governor

Lujan Grisham lifted the requirement for face masks to be worn in most indoor spaces.  Office of

the Governor Press Release (Feb. 17, 2022), available at

https://www.governor.state.nm.us/2022/02/17/new-mexico-indoor-mask-mandate-lifted/ (last

visited March 3, 2022).  Governor Lujan Grisham stated that "[w]ith vaccines, boosters and

effective treatment options widely available, we have the tools we need to protect ourselves and

keep our fellow New Mexicans safe." *Id.* Thus, the trajectory of Covid-19 restrictions in New

Mexico shows a movement towards masking, vaccination, and treatment rather than a return to

business shutdowns and occupancy restrictions. There is no reasonable expectation that the

restrictions Mr. Behounek complains of will recur.

In his response—and in direct conflict with his statement that he is no longer bringing a

claim for prospective injunctive relief—Mr. Behounek states that his alleged injuries "are either

ongoing or clearly have the potential of occurring again and the Governor of New Mexico has

made it clear that she will not hesitate to implement any of these unconstitutional measures

again." Doc. 65 at 4, ¶ 6.[7]  Regarding the "shelter in place" order issued by the State of New

Mexico, Mr. Behounek states that "[w]hile this order has since been lifted it has been repeatedly

---

[7] There are two exceptions to the doctrine of mootness—"situations in which a case remains
subject to federal court jurisdiction notwithstanding the seeming extinguishment of any live case
or controversy." *Brown*, 822 F.3d at 1166. The first exception to mootness is where a case
involves disputes that are "capable of repetition, yet evading review." *Id.* This "exception
applies where (1) the challenged action is in its duration too short to be fully litigated prior to
cessation or expiration, and (2) there is a reasonable expectation that the same complaining party
will be subject to the same action again." *Id.* "[T]he plaintiff bears the burden of establishing
the issue is a wrong capable of repetition yet evading review." *Ind v. Colorado Dep't of Corr.*,
801 F.3d 1209, 1215 (10th Cir. 2015). "The exception is narrow and is only to be used in
exceptional situations." *Id.* (citation omitted). Mr. Behounek does not argue that the first
exception applies in his case.

The second exception to mootness is "a defendant's voluntary cessation of an alleged
illegal practice which the defendant is free to resume at any time." *Rio Grande Silvery Minnow
v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010). This exception "traces to the
principle that a party should not be able to evade judicial review, or to defeat a judgment, by
temporarily altering questionable behavior." *Id.* (citation omitted). Thus, "this exception exists
to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit
moot and then resuming the illegal conduct." *Id.* (citation omitted). While Mr. Behounek asserts
that defendants are likely to resume the challenged orders at any time, the historical and current
state of Covid-19 restrictions in New Mexico do not support this assertion. In addition, Mr.
Behounek has neither alleged nor made a "*clear showing[] of reluctant submission* [by Governor
Lujan Grisham] and a desire to return to the old ways." *Rio Grande Silvery Minnow*, 601 F.3d at
1116. This exception to mootness does not apply.

threatened again and remains a possibility." Doc. 65 at 15, ¶ 36. Mr. Behounek's cursory and threadbare statements are not enough to show that Governor Lujan Grisham is likely to impose the same restrictions again. He does not support this assertion with any argument or evidence. In addition, as discussed above, the historical and current state of Covid-19 restrictions in New Mexico do not support Mr. Behounek's assertion.

Defendants' voluntary cessation of the Covid-19 restrictions cited by Mr. Behounek in his complaint render his request for prospective injunctive relief moot. First, the orders and limitations Mr. Behounek complains of are no longer in effect. Second, there is no reasonable expectation that defendants will reimpose the same orders and limitations in future. The Court is convinced that the challenged conduct cannot reasonably be expected to start up again. Thus, all claims for prospective injunctive relief against Governor Lujan Grisham in her official capacity are moot.

### D. The Court should decline to exercise supplemental jurisdiction

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005). Federal courts have the authority to hear controversies arising under federal law—federal-question jurisdiction—and controversies arising between citizens of different states—diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. Once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *Exxon Mobil Corp*., 545 U.S. at 552; 28 U.S.C. § 1367(a). Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

20

"When all federal claims have been dismissed," however, "the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998)).  The Supreme Court has recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers*, 383 U.S. at 726.  A district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.' " *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) (unpublished).  District courts usually should decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  *See Armijo v. New Mexico*, 2009 WL 3672828, at *4 (D.N.M. 2009) (unpublished) ("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").

As discussed above, Mr. Behounek's last remaining federal claims—the claims against the State of New Mexico and Governor Lujan Grisham in her official capacity—are without merit and should be dismissed.  All claims for monetary damages against the State of New Mexico and Governor Lujan Grisham in her official capacity are barred by sovereign immunity. All claims for prospective injunctive relief against Governor Lujan Grisham in her official capacity are moot.  Thus, I recommend dismissing all of Mr. Behounek's federal claims.  I therefore recommend that the Court decline to exercise supplemental jurisdiction over Mr. Behounek's state law claims and dismiss these claims without prejudice.

### E.  Conclusion

I recommend the Court GRANT Defendants Michelle Lujan Grisham and the State of New Mexico's Motion for Judgment on the Pleadings for Plaintiff's Official Capacity Federal Law Claims (Doc. 64).  All remaining federal claims for monetary damages against the State of New Mexico and Governor Lujan Grisham in her official capacity are barred by sovereign immunity.   All remaining federal claims for prospective injunctive relief against Governor Lujan Grisham in her official capacity are moot.  I therefore recommend the Court dismiss with prejudice all remaining claims against the State of New Mexico and Governor Lujan Grisham in her official capacity under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments with prejudice.  I further recommend that the Court decline to exercise supplemental jurisdiction over Mr. Behounek's state law claims, and that the Court dismiss these claims without prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge